UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 09-23424-CV-HOEVELER

KRISTEN CANTLEY and
BECKETT CANTLEY, married
individuals,

    Plaintiffs,

STEPHEN DUCHARME and
MICHAEL DUCHARME, and AMERICAN
HEALTH, INC.,

    Defendants.
_____

## ORDER DENYING MOTION TO QUASH

BEFORE the Court is defendants' motion to quash plaintiffs' service of process. The motion has been fully briefed and is ready for a decision. For the reasons that follow, the motion is DENIED.

### Background

In December 2005, the plaintiffs, husband and wife Beckett and Kristen Cantley, were introduced to defendants, brothers Stephen and Michael Ducharme, through Mrs. Cantley's real estate agent, Eloy Carmenate. Over the next few years, the Cantleys engaged in several real estate transactions with the Ducharme brothers' real estate enterprise, American Health, Inc. (AHI). Specifically, the Cantleys entered agreements under which they would purchase three condominium units in Panama City to re-sell at a profit, with the assistance of the Ducharmes. On November 11, 2009, plaintiffs filed a complaint alleging that the Ducharmes, individually and as AHI's representatives, fraudulently induced plaintiffs to purchase Panama

1

City condos by misrepresenting material facts about financing, down payments, and re-sale opportunities. On February 2010, plaintiffs purported to serve the defendants under § 48.181 of the Florida Statutes, by serving the Florida Secretary of State and following the statutory notice requirements. On April 6, 2010, the Ducharmes moved to quash service of process, arguing that substitute service on the Secretary of State is improper and ineffective because neither of the brothers nor AHI conduct business in Florida and, therefore, they fall outside the purview of § 48.181.

I.

The Florida substitute service statute § 48.181 constitutes an exception to the general rule that a defendant must be personally served by providing that any foreign corporation "operat[ing], conduct[ing], engag[ing] in, or carry[ing] on a business or business venture" in Florida is deemed to appoint Florida's Secretary of State to accept service of process on its behalf. The statute must be strictly construed to protect due process guarantees. See Monaco v. Nealon, 810 So.2d 1084, 1085 (Fla. 4th DCA 2002); S.T.R. Indus., Inc. v. Hidalgo Corp., 832 So.2d 262, 263 (Fla. 3rd DCA 2002). To perfect substitute service, the complaint must allege the jurisdictional requirements prescribed by the statute. Mecca Multimedia, Inc. v. Kurzbard, 954 So.2d 1179, 1182 (Fla. 3rd DCA 2007). The jurisdictional requirements of § 48.181 are that the defendant conducts business in Florida and is either a (1) nonresident, (2) resident of Florida who subsequently became

2

a nonresident, or (3) resident of Florida concealing his or her whereabouts. See § 48.181; Alvarado v. Cisneros, 919 So.2d 585, 589 (Fla. 3rd DCA 2006). The burden of pleading facts that support the applicability of substitute service falls on the party seeking to invoke the provisions of the long-arm statute. Labbee v. Harrington, 913 So.2d 679, 682 (Fla. 3rd DCA 2005). In moving to quash substitute service, a defendant must provide factual basis to controvert the presence of the necessary jurisdictional requirements. Int'l Graphics, Inc. v. MTA-Travel Ways, Inc., 71 F.R.D. 598, 604 (S.D. Fla. 1976). If the defendant provides such basis, the burden shifts to the plaintiff to present competent evidence supporting the application of § 48.181. Id.

## II.

Here, the plaintiffs allege that the Ducharmes are non-residents doing business in Florida.[1] The determinative question is whether defendants' actions and presence in Florida is sufficient to satisfy the, "operat[ing], conduct[ing], engag[ing] in, or carry[ing] on a business or business venture" requirement of § 48.181. By enacting § 48.181, the Florida legislature intended to regard nonresidents who "have availed themselves of the privilege of dealing in goods, services, or property, whether in a professional or nonprofessional capacity, within the State in anticipation of economic gain" as operating a business or business

---

[1] The Cantleys also suggest that one or both of the brothers is concealing his whereabouts. However, the Court does not find enough evidence to support this and, in any event, it is immaterial.

3

venture. Labbee, 913 So.2d at 683 (internal quotations omitted). While no formal test exists for determining whether a defendant's conduct satisfies the "doing-business" requirement, Florida courts evaluate whether the facts particular to each case show some course of business in Florida for pecuniary benefit. See, e.g., Int'l Graphics, 71 F.R.D. at 602-603.

In this case, the Court is satisfied that defendants' business relationship with Eloy Carmenate, a Florida real estate agent, is sufficient to establish the business requirement of § 48.181. The plaintiffs allege and present evidence that the Ducharmes, individually and on AHI's behalf, actively solicited prospective condo buyers in Florida through Mr. Carmenate. Mr. Carmenate stated in his declaration that the Ducharmes offered him a 3% commission on the purchase price of each condo unit that he helped sell to Florida residents. While defendants deny their business relationship with Carmenate, the Court is satisfied that the greater weight of the evidence supports the plaintiffs' allegations. Indeed, it appears that Carmenate's promotion of the Panama City condos was central to the plaintiffs' decision to conduct business with the Ducharmes and AHI.[2] Moreover, although the Ducharmes both assert that AHI is not aware of any marketing or advertising done by Carmenate concerning AHI's Panama properties, they have not explained the e-mail that Stephen Ducharme sent to Carmenate on September 12, 2012, in which he praises Carmenate's

---

[2] Mr. Carmenate apparently did not receive a cash commission from the defendants, but his commission came in the form of a discounted price on his own Panama condominium purchase from AHI.

4

sale-pitching ability, and offers him a commission of $1 million for finding buyers for another property the Ducharmes were planning to construct. Additional evidence of this arrangement is provided by Carmenate's trip to Panama with the Cantleys to help them buy the condos, and Carmenate's introduction of another prospective buyer, Amerlio Rivero, to the defendants leading to Rivero's own subsequent condominium purchase from AHI. Thus, whether through a formal commission agreement, or an informal *quid pro quo* arrangement, it appears that the defendants did purposely avail themselves of the privilege of dealing in property with Florida residents via their interactions with Mr. Carmenate, among other business contacts with Florida, and were properly served under § 48.181.[3] It is hereby:

**ORDERED AND ADJUDGED:** The defendants' motion to quash service of process is DENIED. However, the defendants are given 20 days from the date of this order to show cause why default should not be entered.

**DONE AND ORDERED** in Miami, Florida, June 14, 2010.

_____
WILLIAM M. HOEVELER
SENIOR UNITED STATES DISTRICT JUDGE

---

[3] The Court notes that, in addition to the Carmenate fee arrangement, it is undisputed that Stephen Ducharme met with the Cantleys at his parents' South Beach apartment. According to the Cantleys, the Ducharmes routinely use the South Beach apartment as a base for their Florida business activity, and this meeting was to discuss the Panama City properties. The defendants dispute these facts.